UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEAN MICHAEL RYAN,

    *Plaintiff*,                          CIVIL ACTION NO. 2:17-cv-10562
                                         DISTRICT JUDGE GEORGE CARAM STEEH
    *v.*                               MAGISTRATE JUDGE PATRICIA T. MORRIS

CARSON CITY CORRECTIONAL
FACILITY, HOLMES, SPURLLING,
CAMPBELL, MARQUETTE BRANCH
PRISON, ROBERT NAPEL, FAULK,
JOHN DOES #1-14, CHIPPEWA
CORRECTIONAL FACILITY,
JEFFERY WOODS, PAQUETTE,
SAGINAW CORRECTIONAL
FACILITY, JOSH BUSKIRK, BARAGA
CORRECTIONAL FACILITY,
THOMAS MACKIE, CHUNG OH,
IONIA CORRECTIONAL FACILITY,
WILLIAM SMITH, CATHLEEN
STTODARD, RICHARD GARLACH,
CZOP, BELLAMY CREEK
CORRECTIONAL FACILITY, JOSHUA
BURSKIRK, GAIL BURKE, EARNEST
C BROOKS CORRECTIONAL
FACILITY, D. SPITTERS, MD BADAWI
ABDELLATIF, CHARLES EGELER
CORRECTIONAL, MARK BOOMERSHINE
KEITH PAPENDICK, WILLIAM
BURGENDING, ALL MEMBERS OF THE
PAIN MANAGEMENT COMMITTEE,
MICHIGAN DEPARTMENT OF
CORRECTIONS ("MDOC"), DANIAL HEYNS,
HEIDI WASHINGTON, STATE OF
MICHIGAN, DUANE WATERS HEALTH
CENTER, COROZIN HEALTHCARE,
MEGAN OAKS, SUSAN MCCAULY,
BETTY KEMP, KEVIN CORNING, ANN
MORIN, S. MCCAULY, SHELDON,
JENIFER HATCHER, LAURA MITER

1

JOAN ALFREY, JUDY CRISENBERY,
REBECA DELANO, ELIZABETH M.
BERG, ROBERT SARNIAK, CHRISTY
JASTIFER, DOOLITTLE, TRUDY
DUQUETTE, CONNIE L. CHICK,
JOANN BUNTING, JAMES LELAND,

    *Defendants*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S REQUEST FOR AN ORDER FOR THE MDOC TO AUTHORIZE THE PURCHASE OF A TYPEWRITER, PLAINTIFF'S MOTION TO STAY SUMMARY JUDGMENT, AND DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME IN WHICH TO FILE RESPONSIVE PLEADING**
(Docs. 59, 60 & 61)

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's Request and Motion, (Docs. 59, 60), be **DENIED**, and that Defendants' Motion, (Doc. 61), be **GRANTED**.

**II.    REPORT**

    **A.    Introduction**

Plaintiff Sean Ryan ("Plaintiff") is a prisoner incarcerated at the Carson City Correctional Facility in Carson City, Michigan, and filed a *pro se* complaint under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* on February 17, 2017. Relevantly, he avers that his medical problems—which include carpal tunnel syndrome—interfere with his life in prison and his access to prison services, and that Defendants fail to properly accommodate these disabilities. On June 15, 2017, the Court dismissed *sua sponte* Plaintiff's civil conspiracy claims under § 1983 as against all

Defendants, as well as his § 1983 claims against the State of Michigan, the MDOC, Carson City Correctional Facility, Marquette Branch Prison, Chippewa Correctional Facility, Saginaw Correctional Facility, Baraga Correctional Facility, Ionia Correctional Facility, Bellamy Creek Correctional Facility, Earnest C. Brooks Correctional Facility, Charles Egeler Correctional Facility, and Duane Watters Health Center. (Doc. 15 at 5).

On August 8, 2017, Plaintiff filed his Request for an Order for the MDOC To Authorize the Purchase of a Typewriter. (Doc. 59). He then filed a Motion To Stay Summary Judgment. (Doc. 60). Defendants Heidi Washington, Robert Napel, Willie Smith, Daniel Heyns, Thomas Mackie, and Sherman Campbell ("Defendants") also filed a Motion for Enlargement of Time in Which To File Responsive Pleading. (Doc. 61). I discuss each in turn.

**B.   Plaintiff's Request for an Order for the MDOC To Authorize the Purchase of a Typewriter (Doc. 59)**

Plaintiff first requests injunctive relief in the form of an order requiring the MDOC to authorize the purchase of a typewriter on Plaintiff's behalf. (Doc. 59). According to Plaintiff, "[t]he last typewriter in the Law Library finally broke on or about [July 23, 2017] and [the MDOC] has no intention of purchasing anymore [sic] or repairing the broken ones." (Doc. 59 at 1). He further avers that "[d]ue to a fall, and aggravation of his carpal tunnel, shoulder injury and cervical injur[ies]," his handwriting "is made even worse . . . ." (*Id.*). Although he "has requested assistance multiple times," such assistance was denied due in part to the fact that "Dr. Holmes has falsely stated there is no healthcare[] record of physical or mental problems." (*Id.*). Gesturing towards medical documentation in the

3

record, *see* (Doc. 3 at ID 603, 605, 608-12, 628), he says "the Doctor has basic[ally] ordered Plaintiff not to use his right hand," requiring him "to ask his [b]unkie Scott Newman to write for him which Mr. Newman is very reluctant to do so [sic]. Or use his left hand which results in writing like an kindergardner [sic]." (Doc. 59 at 2). Despite his medical conditions, the MDOC will not permit Plaintiff's father-in-law to order an acceptable typewriter on his behalf as a donation under MDOC PD 04.06.160(P). (Doc. 59 at 3). Failure to accommodate his medical needs in this way, he suggests, interferes with his right of access to the courts—presumably as it relates to the present action. (Doc. 59 at 2).

Plaintiff's Request is most naturally construed as a motion for preliminary injunctive relief. When considering whether to issue such relief, a court must balance the following four factors:

> (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury absent the injunction; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of an injunction.

*Bays v. City of Fairborn*, 668 F.3d 814, 818-19 (6th Cir. 2012). Because preliminary relief is "an extraordinary remedy," the movant must make a far more stringent showing of proof than that required to survive summary judgment. *Winger v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Farnsworth v. Nationstar Mortg., LLC*, 569 F. App'x 421, 425 (6th Cir. 2014). "Although no one factor is controlling," a movant who cannot demonstrate likelihood of success on the merits typically cannot attain preliminary relief." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Even so, Plaintiff need not present an "overwhelming" showing of potential success on the merits in order to prevail

in their motion. *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677, 679 (S.D. Ohio 2012). "[W]here a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting." *Sango v. Wakley*, No. 1:14-cv-703, 2014 WL 3894652, at *2 (W.D. Mich. Aug. 8, 2014).

Because Plaintiff premises his Request on an alleged right of access to the courts in these circumstances, an overview of that right proves instructive. In *Bounds v. Smith*, the Supreme Court held that the Constitution entitles prisoners to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" via "adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 825, 828 (1977). This right was itself fundamental because it empowered prisoners in "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights," which "are the first line of defense against constitutional violations." *Id.* at 827-28. Over time, the Supreme Court explained that standing to bring a right-of-access claim requires a showing of "actual injury," which in turn stems from the nature of the underlying claim. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Justice Scalia, writing for the Court, elaborated on the sorts of claims whose blockage causes actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.* Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

5

*Id.* at 355 (emphasis added). In other words, an underlying claim can 'actually injure' only if it is a direct appeal, a habeas petition, or an "action[] under 42 U.S.C. § 1983 to vindicate 'basic constitutional rights,'" (*i.e.*, conditions of confinement). *Id.* at 354 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)). A frivolous underlying claim precludes a finding of actual injury. *See id.* at 353 n.3 ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."); *Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) ("By explicitly requiring that plaintiffs show actual prejudice to non-frivolous claims, *Lewis* did in fact change the 'actual injury' requirement as it had previously been applied in this circuit."). The Sixth Circuit has strictly construed the Supreme Court's language, and guarantees to prisoners nothing more than the constitutional minimum illustrated in *Lewis*. *See Thaddeus-X v. Bladder*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (reflecting on the Supreme Court's language in *Lewis* and limiting the right of access to "direct appeals, habeas corpus applications, and civil rights claims only."); *see also Green v. Johnson*, No. 13-12305, 2014 WL 4054334, at *3 (E.D. Mich. Aug. 14, 2014) (discussing the Sixth Circuit's narrow construction of *Lewis*'s language, and adhering closely to it); *Mikko v. Davis*, 342 F. Supp. 2d 643, 646 (E.D. Mich. 2004) (same).[1]

---

[1] Taken out of context, the standard articulated in *Thaddeus-X* ostensibly contemplates a broader right of access than that articulated in *Lewis*, particularly with respect to the phrase "civil rights

6

Plaintiff's request for MDOC authorization to purchase a typewriter fares poorly under the applicable right-of-access-to-the-courts standard. The medical evidence he supplies fails to establish with any clarity the severity of his medical conditions, even if it relays various diagnoses. *See, e.g.*, (Doc. 3 at ID 605, 609-10, 628). Aside from Plaintiff's subjective complaints, his records' authors describe his conditions as having only mild limiting effects, if any. *See, e.g.*, (Doc. 3 at ID 608) ("He has excellent flexion and extension strength of the wrist, hand and elbow areas."); (Doc. 3 at ID 612) ("Symptoms are reduced with medications, activity restrictions. The patient has not noted any muscle atrophy. Arm dexterity is normal in both arms. Fine finger movements and coordination are not impaired in either hand. Gait is noted to be normal."). Nor does his Request convincingly identify how the MDOC—or any other Defendants—have failed to accommodate him aside from refusing to allow his father-in-law to purchase a typewriter on his behalf. And even with respect to this narrow issue, his evidence remain unpersuasive. Though he indicates a need to seek help writing memoranda from his bunk-mate Mr. Newman, and avers that Mr. Newman penned the instant memorandum, examples of his handwriting provided in attached exhibits show him musing in perfectly legible handwriting about how unbearably illegible his handwriting is due to his injuries. (Doc. 59, Ex. JJ, MM); *see also* (Doc. 3 at ID 539-54, 556-60). He received "[n]o work assignment" due to a "temporary restriction" with his right hand or wrist, but the medical

---

claims." *Thaddeus-X*, 175 F.3d at 391. However, the Sixth Circuit frames its language as a *rephrasing* of the same "carefully-bounded right" described in *Lewis*, rather than an *expansion* of the constitutional minimum.

evidence does not at this time signify an inability to write.[2] (Doc. 59, Exs. CC, DD). Put simply, there seems little likelihood of success on the merits because Plaintiff makes only a feeble attempt to demonstrate such likelihood.

Denying Plaintiff's requested relief would also likely cause him no constitutionally cognizable injury—and thus, *a fortiori*, no irreparable harm. "In determining whether a plaintiff has shown irreparable injury, courts consider the substantiality of the injury alleged, the likelihood of its occurrence, and the adequacy of the proof provided." *Reuther v. Chapman*, No. 07-CV-12249, 2007 WL 4790803, at *2 (E.D. Mich. Oct. 22, 2007) (citing *Ohio ex rel. Celebrezze v. Nuclear Regulatory Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). The Sixth Circuit strictly construes prisoners' right of access to the courts, which means Plaintiff can demonstrate 'actual injury' from the MDOC's actions only if the underlying claim against the MDOC is a direct appeal, a habeas petition, or an action arising under § 1983. *See Thaddeus-X*, 175 F.3d at 391. His § 1983 claims against the MDOC were dismissed months ago. (Doc. 15). Interference with any of his other surviving claims against the MDOC could not, therefore, 'actually injure' Plaintiff. Moreover, the evidence he cites in support of his request shows only a diagnosis of "mild right median

---

[2] As an aside, I note that courts in this circuit have found denying prisoners access to typewriters to be constitutionally permissible time and again, albeit largely in the realm of unpublished-opinions. *E.g.*, *Henderson v. Lindamood*, No. 1:07-0055, 2008 WL 4190016, at *13 (M.D. Tenn. Sept. 5, 2008) ("Constitutional claims have not been shown by allegations that a prison inmate . . . was denied use of a typewriter, . . ." (citing *Gibson v. Dutton*, 762 F.2d 1007, 1985 WL 13115 (6th Cir. Mar. 7, 1985) (unpublished table decision))). To the extent his Request simply attacks the prison's failure to furnish an operable typewriter to prisoners in general, (Doc. 59 at 2); (Doc. 59, Ex. BB at 2), these cases sap his argument's potency. And although Plaintiff's injury—and inability to acquire help in preparing his legal materials—certainly adds an extra shade of complexity to this particular legal issue, the most relevant case law does Plaintiff few favors without a surviving § 1983 claim against the MDOC.

sensory mononeuropathy at the wrist (carpal tunnel syndrome)," which does not appear to have inhibited his writing whatsoever. (Doc. 3 at ID 603); *see also* (Doc. 3 at ID 612) ("Fine finger movements and coordination are not impaired in either hand."). For these reasons, the prospect of irreparable injury in this instance seems negligible.

With respect to the final two prongs of this inquiry—whether granting Plaintiff's Request would cause substantial harm to others, and whether it is in the public interest—I note that principles of federalism and the separation of powers discourage "entanglement" in prison administration absent "a strong constitutional claim," *Rhinehart v. Scutt*, 509 F. App'x 510, 512-13 (6th Cir. 2013) (internal quotation and quotation marks omitted); *cf. Sango v. Harpst*, No. 08-12709, 2009 WL 365947, a t *2 (E.D. Mich. Feb. 11, 2009) ("[F]or this Court to interfere with the operation of the state's prison facilities on the facts of this case would cause substantial harm to others." (citing *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984) (courts are ill-equipped to deal with problems of prison administration and reform))). An opposite corollary remains equally true: where a plaintiff presents a strong constitutional claim, the public interest usually militates in favor of granting preliminary injunctive relief. Here, however, Plaintiff offers a rather impotent constitutional argument in favor of his requested relief. In addition, he furnishes no rationale as to how his relief would benefit the public and avoid inconveniencing the MDOC, whose policy directive expressly limits prisoners' rights in personal property (including typewriters) and the manner in which they may acquire such property due to concerns with "[e]xcessive prisoner property." *See generally* MDOC PD 04.07.112(C)-(D) (explaining that such property "constitutes a fire hazard and creates sanitation,

housekeeping, and security concerns"). The final prongs thus advise against granting his Request.

### C. Plaintiff's Motion To Stay Summary Judgment, (Doc. 60), and Defendant's Motion for Enlargement of Time in Which To File Responsive Pleading, (Doc. 61)

Plaintiff next urges this Court to stay summary judgment under Federal Rule of Civil Procedure 56(d) in order to allow him "a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." (Doc. 60 at 1). He specifies the discovery he seeks, and "swears under penalty of perjury" that he requires "sufficient time to review and consolidate the discovered items" to defend against any anticipated summary judgment motion. (Doc. 60 at 2). Although he does not provide reasons for why he "cannot present facts essential to justify [his] opposition" to such a motion, I assume the reasons is simply that the case is young and he has not had time to submit proper discovery requests. Fed. R. Civ. P. 56(d). At this juncture, however, his Motion is preemptive: no defendants have moved for summary judgment and a number of defendants are presently without notice of the case. *See* (Doc. 61 at 6-7); *cf., e.g.*, *Webasto Thermo & Comfort N. Am., Inc. v. BesTop Inc.*, No. 16-CV-13456, 2017 WL 2276988, at *6-7 (E.D. Mich. May 25, 2017) (considering the plaintiff's Rule 56(d) motion in the context of factual issues raised by the defendant's request to convert its motion to dismiss to one for summary judgment). To grant his request would provide him no solace.[3]

---

[3] To the extent Plaintiff asks this Court to issue discovery requests on his behalf, (Doc. 61 at 4-5), such request is denied. Instead, I direct him to Federal Rule of Civil Procedure 26, which provides the guidance necessary to gathering discovery in accordance with the law.

10

Fortunately for Plaintiff, Defendants similarly move for a sixty-day extension of time—that is, until October 20, 2017—to respond to Plaintiff's voluminous complaint under Federal Rule of Civil Procedure 6(b)(1)(B), which provides this Court discretion to extend the time within which "an act may or must be done" for "good cause . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Evaluating a request under Rule 6(b) requires balancing "five principal factors: (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." *Nafziger v. McDermott Intern., Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). Considering the raw quantity of defendants in this case—and the fact that many remain as yet unserved and without counsel, a factor not reasonably within Defendants' control—a sixty-day extension of time to file an answer is entirely appropriate and should be granted. This seems a particularly apt solution where, as here, Plaintiff stands to benefit from such a delay, for he also seeks more time to collect evidence and fortify his case against Defendants' probable arguments.

Accordingly, I recommend that Plaintiff's Request and Motion, (Docs. 59, 60), be **DENIED**, and that Defendants' Motion, (Doc. 61), be **GRANTED**.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

11

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 23, 2017      S/ PATRICIA T. MORRIS
                           Patricia T. Morris
                           United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record. A copy was also sent via First Class Mail to Sean Michael Ryan #787263 at Carson City Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

Date: August 23, 2017                                    By s/Kristen Castaneda
                                                                           Case Manager